Good morning, Your Honors. May it please the Court, Brad Kaiserman with Alan Eisner on behalf of Appellant Curtis Hays. And I would like to reserve five minutes for rebuttal. Sure. I want to focus today's argument on the application of the buyer-seller rule. The rule that states an illegal transaction between a buyer and seller is not sufficient for a conspiracy conviction. And I do want to apologize to the Court. We did just submit a new authority to the Court this morning. I did just learn about this case during my final review yesterday. We did email AUSA, Ms. Ramadas, yesterday evening, so I do apologize for the late notice to her as well. This case does not necessarily introduce any new law on the buyer-seller rule, but we did find it particularly illuminating. Could I ask you a practical question? Suppose you win on this count. Yes. What are the ramifications of that? Yeah, what are the ramifications? Are there any?  We believe that not only does the application of the buyer-seller rule That's a 371 conspiracy, so it's a five-year maximum sentence. We believe that the application of the buyer-seller rule does not only warrant a reversal of the conviction on the conspiracy count, but also a new trial on the remaining counts as there was a significant number of hearsay evidence admitted under the co-conspirator exception to the hearsay rule. Well, under our case law, you don't need to have a 371 charge to admit evidence under 801 D2E. So what will be your response to that? Whether or not there's a charge, it's a question whether or not there is a conspiracy under which the hearsay evidence can be admitted. And if there is no conspiracy, then the evidence cannot be admitted under the co-conspirator exception to the hearsay rule. So in the case that I submitted, United States v. Loveland, 825 F3D 955, that is a Ninth Circuit case from this year, the Court found that the evidence was persuasive that the defendant committed felony possession of methamphetamine with intent to distribute. Well, setting aside the facts of the case for a moment, because your time is short, ultimately, on the conspiracy charge, it's still a sufficiency of the evidence inquiry. Yes. Right? So you want to argue that the relationship between Mr. Hayes and Mr. White is merely that of a buyer-sellers, the evidence is insufficient to sustain a conspiracy conviction. Is that your argument? That is my argument. In what way or ways was the evidence insufficient to sustain the conspiracy charge? One of the factors that's often looked at to determine whether or not a transaction exceeds the buyer-seller transaction and actually goes to conspiracy is whether or not there is any fronting, whether any of the goods, the illegal goods, are sold on credit to the buyer. In this case, there was absolutely no evidence that Hayes fronted any of the goods to White. Another factor that's commonly used is whether or not there's a shared stake, for example, a shared profit in the goods. Again, there was absolutely no evidence in this case of any shared profit from White's sale of the illegal and stolen goods. Isn't there some evidence that he got paid himself, that Hayes got money himself? Yes, and that only suffices for the buyer-seller transaction. It's the equivalent of a drug wholesaler selling to another drug wholesaler, as happened in the Loveland case, and that was held to not be sufficient for a conspiracy. Was there a jury instruction requested? I do not believe there was, Your Honor. From my view of the record in this case, I saw no indication that trial counsel made any argument or was even aware of the buyer-seller rule. So the trial counsel did try to suppress some of the hearsay statements by arguing that the conspiracy was not in existence at the time, that certain statements, such as those made by the witness, Curry, and those made by Lonnie Esher Cash, and so that those statements should not have been admitted under the co-conspirator exception. But there was no request for a buyer-seller instruction in this case. So under your buyer-seller view of the case, you're saying Hayes was the buyer? Hayes was the seller. Hayes made a wholesale... I'm sorry, the seller, yes. ...wholesale to White. White resold those items. That does not form a conspiracy, though. What we are focused on is the transaction between Hayes and White, and there was no evidence to indicate that Hayes had any involvement or received any profit from White's sales to these other parties. I thought, and you could correct me in terms of your prejudice argument about the statements and furtherance of the conspiracy, the theory of the conspiracy, co-conspirator exception, are two people who are vented into an agreement, and therefore, essentially, they're partners. Whether it's to buy and sell, they're vented into an agreement where one steals and sells stolen property to another. You could call it buyer-seller, whatever you want. And the exception of statements and furtherance of the conspiracy applies because they're essentially acting as agents of one another. I would respectfully disagree, Your Honor. I think that there is clear and consistent authority holding that a transaction between a buyer and seller does not amount to a conspiracy, in which case the statements cannot be made. It may not involve, at best, it may not involve a conspiracy that's chargeable under 371. It doesn't mean there wasn't an agreement that was entered into between the two of them so that the statements made by one and furtherance of the other are admissible. But I understand your argument. And I understand your argument as well, Your Honor. I have not seen any authority that uses a different definition of conspiracy for the admission of hearsay evidence as opposed to the offense of conspiracy itself. If we were to accept your argument, I was thinking in the many other contexts, for example, selling illegal arms to Iran or to North Korea. And if I, under your theory then, a arms dealer, in clear violation of federal law, would say, well, I am the seller and the arms agent in North Korea is the buyer. And so, yes, we have an agreement to evade the export laws, but because I'm the seller and he's the buyer, it's not a conspiracy. Is that right? That's the law as it stands right now. That's from my view of the – And your case is Loveland for that proposition. As well as the cases that have been said in the briefs as well. Loveland, I believe, did not create any new law. I believe it was just a restatement of the law. And they cite other cases in which the buyer-seller rule has been applied, including cases in which a conspiracy conviction was found to not be sufficient, really based on the evidence. And I do want to point out that the Loveland court states – And here they cite another case, United States v. Lennox, 18 F3D 814. That's from the Ninth Circuit in 1994. And they say that even a buyer-seller – sorry. Even a seller's knowledge that the buyer intends to redistribute is not sufficient for conspiracy, quote, without an intention and agreement that they would distribute to others. So without any agreement between White and Hayes for White to redistribute to others, there's not sufficient evidence for a conspiracy, even if Hayes knew that White – And they're a compelling inference that that's what he had to be doing, that White wasn't just storing it in all the stuff in his house for – Well, exactly. I mean, he wasn't running a store, you know, a yellow warehouse or something like that. And that's why I think – It seems obvious that that was the purpose. Again, though, as this case says, knowledge that the other person is going to sell or resell the goods, I should say, is not sufficient for a conspiracy. There has to be an agreement between them that the second person is going to resell. And there was no evidence of an agreement here. None of the text messages between White and Hayes even referenced any of the firearms. So there was no indication of what their discussions were, no evidence of what their agreements were. And without any evidence of an agreement other than a speculated knowledge that Hayes would have known that White was reselling, that itself is not sufficient for a conspiracy. Well, I'm looking at the indictment, and the objects of the conspiracy is to steal or theft of firearms, which have moved in interstate commerce, receipt and possession of stolen firearms, theft of interstate and foreign shipment. Those are the listed objects of the conspiracy. So the fact that there were a lot of evidence, overwhelming evidence, actually, that Hayes is White's source for the stolen firearms, inferences can be drawn from that in the jury. That's what the jury accepted. So you've got a pretty tough argument on sufficiency of the evidence, don't you? Are you referring to the non-conspiracy accounts or to the? I'm talking about the conspiracy. On the conspiracy itself. Again. The introduction to the indictment is to recount. Again. There are inferences that can be drawn from the fact that Hayes was White's source for the firearms. I would again point to the authority in Loveland and these other cases that have been discussed in the briefs that just because Hayes was the source, or I should say, even assuming arguing that Hayes was the source of the firearms and the other stolen goods for White, that itself does not create a conspiracy. That is what the buyer-seller rule that has been applied in multiple cases clearly states that you need more than just a wholesale transaction to elevate the offense to a conspiracy. All right, you're down to three and a half minutes. Do you want to save the balance? Yes, I would. Thank you. Let's hear from the government. Good morning, Your Honors. May it please the Court. Sandia Ramadas on behalf of the United States. Your Honors, in this six-day trial, the government presented overwhelming evidence of a clear pattern that pointed to the defendant, UPS driver Curtis Hayes, as the Curtis who was White's source of the 72 firearms and other merchandise. And as Your Honors, as one pointed out, sufficiency of the evidence is, in fact, the key inquiry in today's argument. And consistent with the standard of review in Nevels and Begay, the government presented a chain of logic that proved defendant's guilt beyond a reasonable doubt. And I'd like to take a moment just to go through some of that evidence that was presented at trial. Excuse me. First, as Your Honors are aware, and as defendant didn't really touch on in either the briefs or in argument today, there was the testimony of several live witnesses against the defendant. First, Pierre Curry, who was a known firearms dealer, who was a cooperator in this case, had conversations with White prior to August 2012 when he was arrested where White told him that he obtained the firearms from somebody who worked at UPS. In fact, Curry testified that he sold 8 to 10 new Browning pistols that were given to him by White and that those matched the firearms that were eventually found in his residence. And White talked about and sent Curry texts, including photos of the Kimber .45 firearms for Curry to sell. So in addition to the testimony of Pierre Curry, Your Honors, we also have the testimony of Lanisha Cash. And Ms. Cash testified that the Curtis in her text messages, who was the source of the toys or firearms, was, in fact, White's friend Curtis. She had never met Curtis, but she knew that he was White's friend and associate. In addition, Your Honors, we also have the toll records and evidence of that in this case, that the only UPS employee in White's contacts was Curtis Hayes, the defendant. And we also know, Your Honors, that Curtis Hayes, the defendant, spoke with White on each day of the thefts. We also had cell site information, Your Honors, and that focused on the defendant and White being in close proximity to each other on the theft dates in question. In addition, we had testimony from two UPS officials, Marie Gomez and Antonio Puebla, who testified that the defendant not only worked on each day of the thefts, but that he was only one of three drivers who worked on those days, that he worked in the bay that was closest to the bay that delivered to Turner's Outdoorsmen, which was the store from where the firearms were stolen, and that he was the designated overflow driver for Turner's and the designated driver for Costco. Have you had a chance to review this Loveland case that counsel submitted to the court this morning? I reviewed it this morning, Your Honor, and counsel is correct that it was sent to me last night. And, Your Honor, counsel is correct in pointing out that Loveland does not create or point out any new law here. In fact, it does not apply the buyer-seller rule beyond the drug context. And, in fact, Your Honors, there is no case law applying the buyer-seller rule beyond the drug context. In addition, as Your Honor pointed out, theft and receipt were both objects of the conspiracy here. This was not about just distribution or sales, as was true in Loveland and in the cases cited by Loveland and in the cases cited in defendant's brief. Explain to me why the buyer-seller rule can't apply outside of the drug context. Well, first, Your Honor, there is no case law applying it outside of that context. The cases that we've cited — Sure, but as an analytical matter, why doesn't the analysis apply outside of the drug context? Well, I think Judge Owen's example was a very good one. In any transaction, then, that we would have, whether that's between two arms dealers or in another context, those would never be considered, then, anything beyond a conspiracy. It would be just beyond the buyer-seller rule. It would be a mere conspiracy. And here, as Judge Corman pointed out, it's obvious that the purpose of this transaction was to resell the firearms. These were 72 firearms, often multiples of the same weapon. This was not for personal use. And distinct from Loveland and in some of the other cases that were cited, the Court noted in Loveland that Loveland, who was a purchaser of methamphetamine, was free to shop anywhere for his methamphetamine. But as Your Honor pointed out, White's only contact at UPS and his source of the firearms was Curtis Hayes. So this is a distinct factual situation from any of those cases that have been cited. I mean, it seems to me the answer to Judge Nguyen's question is that in the typical buyer-seller context, it's buyer and end consumer. That's right. I mean, seller and end consumer with narcotics. Maybe child pornography could be an example where someone would sell child pornography to someone and the end user is the one who buys it. But in this case, I take it, at least from the indictment of the evidence, you're saying that these guns were not end user. They were to be done something else with once they were stolen and given to these guys. Absolutely, Your Honor. And that was the evidence that was presented at trial, consistent with that. Sure. It may not fit the facts of this case, but as a theoretical and analytical matter, it could apply outside of the drug context. So if you basically go out on the street and sell a single buyer a firearm and the government tries to charge a conspiracy account based on that single transaction, couldn't the defendant then say, well, wait a minute, this isn't a conspiracy, I just went out and bought a gun? Well, respectfully, Your Honor, that particular situation that you're pointing out is not the situation that we have here. Oh, I appreciate that. I understand. I'm sorry to cut you off, but I think the concern that we would have as a court is that, for example, you have these swap meets where people buy $2 copies of DVDs that are counterfeit. And we want to be careful to say, and under the government's theory, we're not going to be able to charge the people who buy the $2 DVD of Home Alone 2 and have them be charged as a conspirator buying that DVD. I take it you're saying in this case we don't need to reach that far, correct? You do not need to reach that far, Your Honor. And respectfully, in that case, I'm not even sure that that would meet federal guidelines for prosecution. But I do agree, Your Honor, that you would not need to reach that far in this case. If Your Honors would like, I can briefly address the 404B argument as well. I don't have any questions with regard to that. Do you, Judge Corman? Judge Owens? All right. If Your Honors don't have any more questions, I would respectfully submit. Thank you. Thank you. There's a little bit of time on the clock. Counsel, would you like to present rebuttal arguments? Yes, I would. I would first like to state that I do not hear a compelling reason to why the buy-as-sale rule should only be applied to drugs. I do understand that the case law has focused on drug transactions, but the issue here is whether or not the sale from one person to another person of illegal goods constitutes a conspiracy. And multiple cases have held that that in itself is not sufficient for a conspiracy. I do, since I didn't touch upon this too much before, I do want to focus on the impact of the hearsay evidence that was admitted in the co-conspirator statement. When opposing counsel mentioned the sufficiency of the evidence argument, she first mentioned that Pierre Currie testified that he learned from White that someone from UPS had supplied the goods. And her second main point was that Lanisha Cash had sent a text message referencing toys from a Curtis. The fact that she mentioned these two points, both of which should have been excluded under the hearsay rule and were not admissible under the co-conspirator exception, demonstrates that the introduction of this- And that your argument is tied to your other argument. Yes. So they go together. They do go together. I'm trying to focus now on the impact of the exclusion of the evidence, or what should have been excluded, that the introduction of this evidence was not harmless. These were the first two key points of evidence that she raised in her sufficiency argument. And neither of these pieces of evidence, along with text messages sent by White to other individuals, should have been admitted under the co-conspirator exception because there was no conspiracy. While I understand that other evidence was presented at the trial beyond this hearsay evidence, the other evidence presented was primarily circumstantial, and I do not think that the introduction of this evidence can be considered harmless in light of the fact that the other evidence was almost exclusively circumstantial evidence. I would like to also point out, as far back to the question whether or not there was a conspiracy to begin with, there was also no evidence here that Hayes had any obligation of ongoing and future sales to White. There was no evidence of the use of codes between Hayes and White. And as I said, there was no shared profit. There was no credit. And as I've previously stated, even if Hayes, assuming the argument that he provided the goods to White, knew that White was going to resell the goods, that in and of itself is not sufficient to establish a conspiracy. Thank you. All right. Thank you very much, counsel, for both sides for your arguments. The matter is submitted for decision.
judges: Nguyen, Owens, Korman